THE PEOPLE OE PUERTO RICO, Plaintiff and Appellee, *v.* ARACELIO HERNÁNDEZ CASTRO ET AL., Defendants and Appellants.

No. 15597.    Decided May 8, 1964.

*Santos P. Amadeo, Guillermo Bird,* and *Ismael Cruz Jiménez* for appellants. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, pro tempore, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Aracelio Hernández Castro, Domingo Quiles Nieves and Ismael Sánchez were found guilty on April 22, 1953 of the crimes of murder in the first degree and rape. They were sentenced on the following April 27 to life imprisonment and to serve an indeterminate sentence of from 10 to 20 years in the penitentiary, to be served concurrently. On May 1 they were transferred to the State Penitentiary. While they were confined therein—in the first week of confinement—they had certain writings prepared which they entitled "Motion of Appeal" and "Motion of Insolvency" which they delivered, according to the uncontroverted testimony given at the hearing set by this Court,[1] to an employee or officer of the Office of Records of the penal institution for transmission, after they were countersigned, to the clerk of the Superior Court,

---

[1] Owing to the questions of fact raised which needed to be passed upon by the presentation of evidence, this Court motu proprio set a hearing and ordered the summoning of those in charge of the records in the State Penitentiary and in the district jail of Arecibo and the remittance of the original record in the criminal case.

Arecibo Part. These writings were signed by the three prisoners. The so-called Motions of Insolvency, which are but requests for an order to transcribe the evidence in forma pauperis, are dated May 4, 1953 and are endorsed by "Palmer" who was identified as the director at that time of the socio-penal services of the Penitentiary and who also supervised the Office of Records, one of his functions being to endorse the documents prepared by the prisoners. None of the "Motions of Insolvency" bear a filing stamp.[2] The "Motions of Appeal" bear two stamps which read: "May 7—10:47 AM '53" and "May 14—8:44 AM '53." Also, in the original record there are additional copies of the "Motions of Appeal."

On June 8, 1953 the clerk of the Superior Court, Arecibo Part, sent a certification to the prosecuting attorney of this Court setting forth that defendants had appealed on May 4, 1953 from the sentence of life imprisonment and that they had not served the notice of appeal on the district attorney. Dismissal of the appeals was sought for lack of jurisdiction. "It appearing . . . that the notice of appeal was not served on the district attorney of the Superior Court, on June 30 we entered an order dismissing the same."[3]

■■ On September 25, 1963 defendants filed a motion "in the nature of coram nobis" requesting, among other things, that the mandate sent to the Superior Court, Arecibo Part, be recalled and their notices of appeal be reinstated,

[2] Although the motions were attached to the record, the trial court took no action thereon. We presume that the clerk did not refer them to the judge who intervened in the prosecution.

[3] In view of the result which we have reached, we need not consider the effect of the dismissal ordered on the appeals taken from the judgments entered in the rape cases. As may be observed, both the motion for dismissal and the certification on which it was based refer only to the sentences of life imprisonment for the crime of murder in the first degree, but not to the sentence of from 10 to 20 years' imprisonment for the crime of rape.

since our order dismissing the same was contrary to law because appellants had notified "constructively" the district attorney by delivering to the prison authorities their notices of appeal. That is correct. In *Huertas* v. *Warden*, 75 P.R.R. 359, 360 (1953), we held that "When an inmate is sentenced and he timely and with due diligence prepares his appeal papers and delivers them to the prison authorities in time to be transmitted to and received by the clerk of the trial court before the term to appeal expires, and those officers fail to do so, the delivery to them of the notice of appeal constitutes a constructive filing within the prescribed time limit." In this case not only were the notices delivered within the statutory period to take appeal, but the prison authorities transmitted them in due time for filing and they were actually filed not later than May 7, 1953, as it appears from the foregoing statement of facts.

The failure to serve personal notice on the district attorney was also consented to by the State, since the intervention of the officer of the prison where they were confined made it his duty to send, or to require for remittance thereof to the district attorney, a copy of the notice of appeal. *People* v. *Flores*, 77 P.R.R. 623 (1954).[4] As we have seen, appellants furnished copies of the notices. They timely did everything required of them to serve the notice on the district attorney, and they should not therefore suffer the consequences of the omission of the prison officer.

In view of the foregoing, we need not discuss the other questions raised in the motion. The clerk shall direct that

---

[4] This jurisprudential rule was incorporated as Rule 195 of the Rules of Criminal Procedure of 1963, which reads:

"When the appellant is confined in a penal institution and takes an appeal in his own right, the appeal shall be taken by delivering the notice of appeal, within the term to appeal, to the officer having his custody. It shall be the duty of said officer to file immediately the notice of appeal with the clerk of the court where judgment was rendered. Upon receipt of the notice of appeal the clerk of the court shall notify the prosecuting attorney."

the mandate issued in pursuance of the order of June 30, 1953 be returned, and after receipt thereof the dismissal ordered shall be set aside and the appeals reinstated, in order to enable appellants to proceed with the steps necessary to perfect the same.